UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LISA R. LACER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | No. 4:16-CV-102-SPM |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) or judicial review of the final decision of

Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the

application of Plaintiff Lisa R. Lacer ("Plaintiff") for Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented

to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §

636(c)(1). (Doc. 9). Because the decision denying benefits was supported by substantial evidence,

the Commissioner's denial of Plaintiff's application will be affirmed.

### I.   FACTUAL BACKGROUND

On June 16, 2014, Plaintiff testified at a hearing before the Administrative Law Judge

("ALJ"). (Tr. 31-47). Plaintiff testified that she can no longer do her past work helping classroom

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

teachers or doing sales because of her inability to focus, her anxiety being around people, and her level of stress. (Tr. 34-36). She testified that she has mood swings, has anger issues, has panic attacks four times a day, has crying spells two or three times a day, gets nervous in groups of people, has severe depression in the wintertime, gets agitated if she has done something wrong, and has racing thoughts that make her unable to focus. (Tr. 39-45). She also testified that due to arthritis and a back injury, she has trouble lifting 15 or 20 pounds, can stand for only about 30 minutes before it becomes too painful, and can sit for only 10 to 15 minutes before becoming stiff. (Tr. 46-47).

Plaintiff's treatment records show that every few months during the alleged disability period, Plaintiff sought treatment for swelling in her legs or for joint pain in her hands, knees, ankles, and/or feet; her treatment providers have diagnosed osteoarthritis, lumbar disc degeneration, and plantar fibromatosis; and they have recommended weight loss, non-narcotic medications, and orthotic inserts. (Tr. 232-39, 263-68, 277-79, 293-303, 316, 288-91). Plaintiff's treatment records also show that she sought regular treatment from a psychiatrist, Howard Ilizicky, M.D., for symptoms including depression, sleep disturbance, "pissy episodes," mood swings, forgetfulness, and racing thoughts; Dr. Ilizicky diagnosed her with bipolar disorder and anxiety and prescribed various medications, including Wellbutrin, Klonopin, and Prozac. (Tr. 247-57, 272-73, 287).

The record contains opinion evidence from three sources regarding Plaintiff's mental functioning. On November 8, 2012, consultative examiner David Peaco conducted a psychological evaluation of Plaintiff. (Tr. 260). He diagnosed Plaintiff with bipolar disorder and assigned a Global Assessment of Functioning ("GAF") score of 55, indicating moderate symptoms. (Tr.

261).[2] He opined that Plaintiff was able to understand and remember simple instructions; that her persistence in completing tasks was mildly impaired; that her concentration was markedly impaired; that her social functioning was moderately impaired; and that her capacity to function effectively with the world around her was moderately impaired due to persistent symptoms of bipolar disorder. (Tr. 262).

On November 19, 2012, state agency psychological consultant Robert Cottone, Ph.D., reviewed the record and issued an opinion. (Tr. 56-60). He opined that Plaintiff was markedly limited in the ability to understand and remember detailed instructions; markedly limited in the ability to carry out detailed instructions; moderately limited in the ability to maintain attention and concentration for extended periods; moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; moderately limited in the ability to work in coordination with or in proximity to others without being distracted by them; moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; moderately limited in the ability to interact appropriately with the general public; moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors; moderately limited in the ability to get along with coworkers or peers; and moderately limited in

---

[2] The Global Assessment of Functioning ("GAF") Scale is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

the ability to set realistic goals or make plans independently of others. (Tr. 59-60). He concluded that Plaintiff was capable of engaging in at least simple work tasks and would perform best in a position that did not include dealing with the public that involved only limited interaction with peers. (Tr. 60).

On August 15, 2013, Plaintiff's treating psychiatrist, Dr. Ilizicky, filled out a Medical Source Statement. (Tr. 274-76). He found that Plaintiff had marked limitations in her ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions, but had only mild limitations in the ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions. (Tr. 274). Dr. Ilizicky further opined that Plaintiff had marked limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 275). He indicated that these limitations were supported by her severe mood swings, unstable emotions, periods of extreme mania lasting four to five years, and inability to predict how she will interact on a day-to-day basis. (Tr. 274-75). He also indicated that at times she has extreme racing thoughts that make most functioning difficult. (Tr. 275). He stated that she had experienced a gradual decline in overall function. (Tr. 274).

## II.    PROCEDURAL BACKGROUND

On September 13, 2012, Plaintiff applied for DIB, alleging that she had been unable to work since December 5, 2011, due to bipolar disorder, sleep apnea, and depression. (Tr. 128, 137-40, 165). Her application was initially denied, and Plaintiff requested a hearing before an ALJ. (Tr. 64, 76-77). After a hearing, the ALJ issued an unfavorable decision dated July 21, 2014. (Tr. 11-22). Plaintiff filed a request for review, and on November 23, 2015, the Appeals Council denied

Plaintiff's request for review. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability

to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 2016; that Plaintiff had not engaged in substantial gainful activity since December 5, 2011, the alleged onset date; that Plaintiff had the severe impairments of osteoarthritis of the knees, shoulders, ankles, and hands, morbid obesity, hypertension, bipolar disorder, and anxiety; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 13). The ALJ found that Plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 15). He found that she was unable to operate foot controls; was unable to climb ladders, ropes, or scaffolds; was unable to kneel, crouch, or crawl; could only occasionally climb ramps or stairs; was to avoid all extreme vibrations, operational controls of moving machinery, working at unprotected heights, and use of hazardous machinery; was limited to only simple routine, repetitive tasks in a low-stress job requiring only simple decision-making; could tolerate only occasional changes in the work place setting; was to have no interaction with the public or co-workers other than casual and infrequent contact with co-workers; and was limited to occupations where the production quotas are based on end-of-day workday measurements only. (Tr. 15). At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 20). However, at Step Five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including mail sorter, marker II, and routing clerk. (Tr. 21-

22). The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from December 5, 2011, through the date of his decision. (Tr. 22).

## V. DISCUSSION

Giving Plaintiff's *pro se* brief a broad construction, Plaintiff appears to be making several arguments: (1) that her impairments meet or equal Listing 12.04 (Affective Disorders); (2) that the ALJ gave insufficient weight to the opinion of her treating psychiatrist, Dr. Ilizicky; and (3) that the ALJ's RFC determination was not supported by substantial evidence.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's

decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**B. The ALJ's Determination that Plaintiff Did Not Meet or Equal Listing 12.04 (Affective Disorders)**

Plaintiff first argues that the ALJ's Step Three finding was incorrect, because her mental impairments meet or medically equal Listing 12.04 (Affective Disorders). Plaintiff bears the burden of showing that she meets all of the specified criteria of a listing. *See Boettcher v. Astrue*, 652 F.3d 860, 863-64 (8th Cir. 2011) (citing *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010)). To satisfy the requirements of Listing 12.04, Plaintiff must show either that the "Paragraph A" and "Paragraph B" criteria of the listing are satisfied, or that the "Paragraph C" criteria are satisfied. 20 C.F.R. pt. 404, Subpt. P, App'x 1, § 12.04. The ALJ found that neither the Paragraph B nor the Paragraph C criteria were satisfied here. (Tr. 14-15).

The ALJ's finding that the Paragraph B criteria were not satisfied was supported by substantial evidence in the record, including Plaintiff's own testimony and function report and the opinion of the state agency psychological consultant. To satisfy the Paragraph B criteria, a claimant must show that her mental disorder results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, Subpt. P, App'x 1, § 12.04. The ALJ reasonably found that Plaintiff had no restriction in activities of daily living, noting that Plaintiff stated that she takes her son to school, prepares meals for her son and husband, does household chores, shops in stores regularly, and uses the computer. (Tr. 14, 43-44, 183-86). The ALJ reasonably found that Plaintiff had only moderate difficulties in social functioning, noting that although she does not like being around large groups of people and at times does not agree

with her family members, she does leave her house to go shopping regularly and to take her son to school. (Tr. 14, 186-88). The ALJ reasonably found that Plaintiff had only moderate difficulties in concentration persistence, or pace, noting that although she reported having trouble finishing tasks and following directions, she was able to answer the questions posed to her at the hearing with thought and clarity. (Tr. 14). In addition, Plaintiff reported performing activities that require focus, including regularly preparing meals, cleaning her house, and driving. (Tr. 32, 43-44, 183-85). The ALJ also reasonably found that Plaintiff had experienced no episodes of decompensation of extended duration, as the Court has found no evidence in the medical records of any such episodes. The ALJ's findings with respect to the Paragraph B criteria were also consistent with the opinion of state agency psychological consultant Robert Cottone, Ph.D., who opined that Plaintiff had no limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in maintaining concentration, persistence, or pace. (Tr. 57).

The ALJ's finding that the Paragraph C criteria were not satisfied is also supported by substantial evidence in the record. (Tr. 14-15). To satisfy the Paragraph C criteria, the claimant must show the following:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>    1. Repeated episodes of decompensation, each of extended duration; or
>    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, Subpt. P, App'x 1, § 12.04. After review of the record, the Court finds no indication that Plaintiff had any episodes of decompensation and no indication that such episodes

would be likely to occur in the event of a minimal increase in mental demands or change in the environment. The Court also finds nothing in the record to suggest that Plaintiff ever lived in a highly supportive living arrangement.

In sum, substantial evidence supports the ALJ's finding that Plaintiff does not satisfy either the Paragraph B or the Paragraph C criteria for Listing 12.04. Thus, Plaintiff's first argument is without merit.

### C. The ALJ's Evaluation of the Opinion of Plaintiff's Treating Psychiatrist

Plaintiff also appears to argue that the ALJ did not give adequate weight to the opinion of her treating psychiatrist, Dr. Ilizicky. As discussed above, Dr. Ilizicky opined that Plaintiff had marked limitations in the ability to understand and carry out complex instructions and to interact with others; that she had extreme racing thoughts that make most functioning difficult; that she has severe mood swings, unstable emotions, and periods of extreme mania; that it is difficult to predict how she will interact on a day-to-day basis; and that she has experienced a gradual decline in overall function. (Tr. 274-75). The ALJ discussed Dr. Ilizicky's opinion at length, but ultimately gave it "little weight." (Tr. 20).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). Although a treating physician's opinion is generally given controlling weight, it is not inherently entitled to it. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). The ALJ may discount a treating physician's opinion if it is inconsistent with the physician's treatment notes or with the record as a whole. *Halverson v.*

*Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

The Court first notes that the ALJ did incorporate some of Dr. Ilizicky's opinions into the RFC. The ALJ limited Plaintiff to only simple, routine, repetitive tasks, which is consistent with Dr. Ilizicky's opinion that Plaintiff had marked limitations in her ability to understand and carry out complex instructions, but only mild limitations in the ability to understand and carry out simple instructions. (Tr. 15, 274). The ALJ also limited Plaintiff to jobs involving no interaction with the public and only casual and infrequent interaction with the public, which at least partially accounted for Dr. Ilizicky's opinion that Plaintiff had marked limitations in her ability to interact with others. (Tr. 15, 275).

The ALJ concluded, however, that Dr. Ilizicky's opinion was not entitled to controlling weight, and that conclusion is supported by the record. The ALJ reasonably found that contrary to Dr. Ilizicky's statement that Plaintiff "has experienced a gradual decline in overall function," (Tr. 274), Dr. Ilizicky's more recent notes support the ALJ's finding that Plaintiff was improving with treatment and medication. (Tr. 20). For example, as the ALJ noted, Dr. Ilizicky did not see Plaintiff at all from August 2012 through March 2013, and when he saw her on April 6, 2013, she was "relatively stable" and her mood was "better," despite some problems with focusing and memory. (Tr. 20, 273). In July 2013, she reported that her treatment was "helping a lot." (Tr. 272). In addition, as the ALJ noted, the most recent treatment note in the record (dated October 2013) indicates that Plaintiff was "better" and was "well—good," and that Plaintiff should follow up in three to four months. (Tr. 20, 287). The ALJ reasonably determined that these notes were inconsistent with the extreme limitations and gradual decline in functioning noted in Dr. Ilizicky's

opinion. (Tr. 20). The Court further notes that even Dr. Ilizicky's earlier treatment notes do not appear to fully support his opinions. For example, although Dr. Ilizicky opined that Plaintiff had "extreme racing thoughts that make most functioning difficult," most of his treatment notes do not mention racing thoughts or similar symptoms. (Tr. 248-53, 273, 287). Moreover, as discussed below, the ALJ also considered and reasonably gave significant weight to opinion evidence from two other experts (a state agency consultant and a consultative examiner) whose opinions were inconsistent with those offered by Dr. Ilizicky, finding those opinions to be well-supported by the medical record. (Tr. 18-19).

In sum, the hearing decision makes it clear that the ALJ carefully considered the opinions offered by Dr. Ilizicky and reasonably found that those opinions should be discounted because they were inconsistent with Dr. Ilizicky's own treatment notes and the other evidence in the record. That finding was supported by substantial evidence, and the Court cannot say that this decision was outside the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

### D. The RFC Determination

Finally, Plaintiff appears to argue that the ALJ erred in assessing her RFC. The ALJ found that Plaintiff had the capacity to perform less than a full range of light work, and he included in the RFC numerous specific physical and mental limitations. Plaintiff argues that because of her physical and mental impairments, she is capable of less than sedentary work.

The Court first considers the ALJ's physical RFC assessment. The ALJ acknowledged that Plaintiff has regularly complained of joint pain and/or swelling in her joints. (Tr. 16-17). However, after analyzing Plaintiff's medical records in detail, he found that her physical impairments were not so severe that they would preclude the performance of light work, with some additional limitations. (Tr. 16-17). That finding is supported by substantial evidence. First, as the ALJ noted,

13

objective findings regarding Plaintiff's impairments were generally mild or normal, including findings that her leg swelling was mild or that she had no edema (Tr. 238, 265); findings of a negative straight leg raise test, no motor or sensory deficits, normal or mildly reduced range of motion, and normal gait (Tr. 265, 288); hand X-ray findings of mild periarticular osteopenia but no arthritis (Tr. 286); and normal bone density findings. (Tr. 285). Second, as the ALJ noted, Plaintiff's doctors recommended only conservative treatments, such as weight loss, non-narcotic pain medication, and orthotic inserts. (Tr. 17, 278-79, 299, 288, 316). Third, Plaintiff's treatment records show that she sought treatment for her physical symptoms only infrequently, often with gaps of several months or more between appointments (Tr. 238, 263-65, 277-78, 293). The Court further notes that in Plaintiff's September 2012 function report, she did not circle "lifting," "standing," "sitting," or "walking" as being among the items affected by her impairments. (Tr. 188). She also reported in her function report and in her testimony that she performs activities such as grocery shopping, cleaning, and laundry, though she noted that her husband does the vacuuming because it hurts her back. (Tr. 43-44, 185-86). In sum, after examining the record as a whole, the Court finds that the ALJ's physical RFC determination is supported by substantial evidence.

The Court next considers the mental RFC determination. As a preliminary matter, the Court notes that the ALJ included several significant mental limitations in the RFC: he restricted her to simple, routine, repetitive tasks, in a low-stress job, requiring only simple decision making; found that she could only tolerate occasional changes in the workplace setting; found that she was to have no interaction with the public and only casual and infrequent contact with co-workers; and limited her to occupations where production quotas are based on end-of-workday measurements only. (Tr. 15).

The Court finds that this assessment was supported by substantial evidence in the record as a whole. As discussed above, the ALJ reasonably found that the treatment notes from Plaintiff's psychiatrist suggested that although she had significant mental symptoms, they improved with medication and were not so severe that they would preclude all work. (Tr. 17, 20, 247-57, 272-73, 287). The RFC finding also was supported by the opinion of state agency psychological consultant Robert Cottone, Ph.D., which the ALJ gave great weight because he found it consistent with the objective medical record. Dr. Cottone reviewed the record and found that Plaintiff had only moderate limitations in her ability to perform most mental work-related activities, was capable of engaging in at least simple work tasks, and would perform best in a position that did not include dealing with the public and having limited interaction with peers. (Tr. 19, 59-60). The RFC finding is also supported by the opinion of consultative examiner David Peaco, Ph.D., which the ALJ gave partial weight. (Tr. 19). Dr. Peaco found that Plaintiff had only mild to moderate limitations in most areas of mental functioning. (Tr. 19, 56-61).

After discussing at length all of the opinion evidence and the medical treatment notes in the record that related to Plaintiff's mental functioning, the ALJ properly incorporated into the RFC those mental impairments and restrictions that he found credible and supported by the record. The Court acknowledges that the record contains conflicting medical opinion evidence regarding the extent of Plaintiff's mental limitations. However, "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The ALJ's decision fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

For all of the above reasons, the Court finds that the RFC was supported by substantial evidence.

**VI.     CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of March, 2017.